**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Garza, *et al.*, | No. CV-22-01310-PHX-JJT |
| Plaintiffs, | **ORDER** |
| v. | |
| Rob Woods, *et al.*, | |
| Defendants. | |

At issue is Defendants' Partial Motion to Dismiss First Amended Complaint (Doc. 20, MTD), to which Plaintiffs filed a Response (Doc. 23, Resp.) and Defendants filed a corrected Reply (Doc. 25-1, Reply). In this Order, the Court will also resolve Plaintiffs' Motion for Preliminary Injunction (Doc. 27), to which Defendants filed a Response (Doc. 34), Plaintiffs filed a Reply (Doc. 38), amicus National Association of Unclaimed Property Administrators filed a brief in opposition (Doc. 40), and Plaintiffs filed a Response thereto (Doc. 41). The Court will resolve these Motions without oral argument. LRCiv 7.2(f).

**I.   BACKGROUND**

In 2000, Arizona enacted into law its present version of the Unclaimed Property Act, A.R.S. §§ 44-301 *et seq.* ("AUPA"), based on the then-current (1995) version of the Uniform Unclaimed Property Act promulgated by the Uniform Law Commission. *See* A.R.S. § 44-331 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states that enact the uniform unclaimed property act.").[1] In the corrected First Amended

---

[1] All 50 states have enacted an unclaimed property act, and approximately 41 of those are based on a version of the Uniform Unclaimed Property Act.

Complaint (Doc. 19-1, FAC), Plaintiffs Jessica Garza and Kevin Terrell, on behalf of themselves and a putative class, challenge the constitutionality of AUPA, naming as Defendants Rob Woods, in his official capacity as Director of Arizona Department of Revenue ("ADOR"), and William Nagel, in his official capacity as Unclaimed Property Administrator within ADOR.

As background, Defendants explain:

> The twin goals of the AUPA were to provide a centralized source for owners or their heirs to locate and make claims for unclaimed property, and to give the State the ability to use unclaimed funds for the public good until and unless such time that an owner or heir submits a valid claim. The procedure established by the AUPA, as in the Uniform Act, is straightforward. After a lengthy dormancy period—*i.e.*, a period in which the apparent owner of the property does nothing indicating an interest in the property (or otherwise ceases contact with the holder)—the holder of the property sends written notice to the apparent owner, using its most current information, seeking confirmation of ownership. If the apparent owner does not respond within four months, the property is deemed abandoned, at which point the holder is required to transfer it to the State's custody, with nearly all of the cash balances (and proceeds from sale of tangible property) later deposited into the general fund for public use. The State, in turn, provides notice to potential claimants, not only through publication, but through social media and a publicly available website, searchable by name or address. Using the website, an owner can easily locate his or her abandoned property and, with just a few clicks, submit a claim. If the State finds that the claim is valid, it is paid; if not, there is an administrative process for resolving any dispute.

(MTD at 1–2.) Plaintiffs allege individuals can make claims with the State for unclaimed property for a period of 35 years under A.R.S. § 44-317(E). (FAC ¶ 31 (citing A.R.S. § 44-317(E) (". . . a person may file a claim . . . within thirty-five years after the final day of the fiscal year in which the department receives the unclaimed property")).)

Plaintiffs claim AUPA is facially unconstitutional "because it does not require Defendants to provide notice to property owners prior to depriving them of their private property" or "provide adequate notice to property owners after depriving them of their private property." (FAC ¶¶ 60(a)–(b).) Plaintiffs further claim Defendants violated Plaintiffs' rights "under the Fifth Amendment (Takings Clause) and Fourteenth

Amendment (Due Process Clause)" and "acted ultra vires by enforcing [AUPA]." (FAC ¶¶ 60(c)–(d).)

Plaintiffs bring the following claims: (1) declaratory relief, (2) procedural due process violation under 42 U.S.C. § 1983 based on lack of adequate pre-transfer notice, (3) procedural due process violation under § 1983 based on lack of adequate post-transfer notice, (4) procedural due process violation under the United States Constitution based on lack of adequate pre-transfer notice, (5) procedural due process violation under the Constitution based on lack of adequate post-transfer notice, (6) Takings Clause violation under § 1983, and (7) Takings Clause violation under the Constitution. In addition to a refund of the value of their property Plaintiffs allege Arizona is holding, Plaintiffs seek permanent injunctive relief and "[r]estitution and disgorgement of all ill-gotten gains to the public and/or claimants." (FAC at 24, Prayer for Relief 5.) Plaintiffs allege that over 1.8 billion dollars of unclaimed property "has been seized" by ADOR as of June 30, 2021. (FAC ¶ 32.)

In their Response brief, Plaintiffs concede that "the Court should dismiss their constitutional claims not asserted within the context of 42 U.S.C. § 1983." (Resp. at 5 n.3.) The Court agrees and will dismiss Counts 4, 5, and 7.

Defendants now contend the Court lacks subject matter jurisdiction over Plaintiffs' claims for retrospective relief based on Defendants' Eleventh Amendment immunity from suit regarding those claims, and Defendants therefore seek dismissal of those claims under Federal Rule of Civil Procedure 12(b)(1). Defendants also contend that Plaintiffs fail to state a claim with regard to the constitutionality of the post-transfer notice provisions and with regard to the Takings Clause, and Defendants seek dismissal of those claims under Rule 12(b)(6).

## II. LEGAL STANDARDS

"A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter

jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002).

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Sovereign Immunity

Defendants move to dismiss the claims for retrospective relief through monetary compensation—portions of Counts 2, 3, and 6—because, they argue, they enjoy sovereign immunity from those claims. The Eleventh Amendment prevents a state from being sued in federal court without its consent. *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 952 (9th Cir. 2008). When the state is "the real, substantial party in interest," Eleventh Amendment immunity extends to "suit[s] against state officials." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quotations omitted). *Ex parte Young* provides an exception to Eleventh Amendment immunity, but it applies only to "claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

To begin with, the parties do not dispute that certain relief sought by Plaintiffs in the FAC is prospective, to which the *Ex parte Young* exception to Defendants' sovereign immunity applies. (*E.g.*, FAC at 23, Prayer for Relief 4 (seeking injunctive relief prohibiting Defendants from taking future actions to acquire private property without adequate due process).) Other relief sought by Plaintiffs is retrospective, such as their prayer for "[r]estitution and disgorgement of ill-gotten gains to the public and/or claimants" (FAC at 24, Prayer for Relief 5). *See Taylor v. Westly*, 402 F.3d 924, 935 (9th Cir. 2005) (finding the plaintiffs' claims for compensation did not fall within the *Ex parte Young*

exception, stating that "[w]hile some may describe this retroactive award of monetary relief as a form of equitable restitution, such claims are in practical effect indistinguishable in many aspects from an award of damages against the State" (internal quotations omitted)).

Relying on *Taylor*, Plaintiffs argue that Defendants cannot invoke sovereign immunity to avoid Plaintiffs' claims for retrospective damages either, because Arizona's sovereign immunity applies only to claims for Arizona's money, and the money the State holds in custody for the benefit of private individuals is not its money but rather that of the individuals. *See id.* at 932. In *Taylor*, the Ninth Circuit examined whether California enjoyed sovereign immunity from suit for claims related to the application of its unclaimed property act—one not based on any version of the Uniform Unclaimed Property Act. The state had sold stock owned by the plaintiffs after they had taken no action on the stock in three years, and the plaintiffs claimed the state provided them no notice whatsoever before selling their stocks and placing the money in a state trust fund. *Id.* at 926. The California statute explicitly distinguished between "escheat" and "permanent escheat," whereby abandoned property—in this instance, money from the sale of stock the state deemed abandoned—did not permanently escheat to the state but rather went into "a trust fund for the interests of all parties having an interest in the property" by which the state Controller "must 'safeguard and conserve' unclaimed property" under the state statute. *Id.* at 930.

The Ninth Circuit found this statutory language established a "custodial trust," such that "to the extent the funds remained in the state's special account, they were being held in trust, rather than being in the state treasury." *Id.* at 931. Thus, "[b]efore California escheated property is 'permanently' escheated, it is like a car that is towed and held in an impound lot. The car is in the custody of the impounding government, but it is held for its owner, if one turns up." *Id.* The California statute also provided that, "if the Controller has paid money over to the general fund of the state, she is required . . . to order it 'retransferred' from the general fund back to the 'Unclaimed Property Fund' if it is subsequently determined that such money or . . . property is not, in fact, permanently escheated." *Id.* Permanent escheatment occurred only after the Controller filed suit in superior court, she

- 6 -

1  published repeated notices in newspapers that included the name of the owner and the last
2  known address, and five years passed after the date of entry of the judgment. *Id.* at 931-32.
3  "Unrestricted title does not pass to the state unless and until the property is permanently
4  escheated," and "[o]nly then may the Controller order the property transferred to the
5  general fund." *Id.* at 931-32.

6        The court concluded that the plaintiffs' suit was not barred by sovereign immunity
7  because California held the money in custodial trust and thus recovery would not come
8  directly from state resources. *Id.* at 932. The court analogized the case to *United States v.*
9  *Lee*, 106 U.S. 196 (1882), in which the Supreme Court found that the state was not entitled
10 to sovereign immunity where the plaintiff merely sought possession of property "wrongfully
11 denied him by agents of the government;" the Ninth Circuit noted that case "was truly one
12 against the possessor, the government agent, and not against the sovereign." *Id.*

13       While recognizing AUPA is distinct from the California unclaimed property
14 statutory regime, Plaintiffs argue that any distinctions are without a material difference.
15 AUPA includes no language providing for escheatment, permanent escheatment, or
16 transfer of title to the State only upon permanent escheatment, as in California, but
17 Plaintiffs point to language in AUPA stating that, "[o]n payment or delivery of property to
18 the department, the state assumes custody and responsibility for the safekeeping of the
19 property." A.R.S. § 44-310(A). Plaintiffs also point to evidence in the form of information
20 on ADOR's website to support their contention that Arizona has a custodial system for the
21 possession of unclaimed property to the same extent as California does, including the
22 Frequently Asked Questions section of the website, which states, "Ownership of unclaimed
23 property will not revert to the State until 35 years after it was reported, and you may submit
24 a claim at any time during that period." (Resp. at 7.) But the text of AUPA does not include
25 language stating the claimant retains title to unclaimed monies transferred to the State,
26 stating instead that "a person may file a claim . . . withing thirty-five years after the final
27 day of the fiscal year in which the department receives the unclaimed property." A.R.S.
28 § 44-317(E).

- 7 -

Unlike the California statute, AUPA also does not provide that unclaimed property given to the State shall remain in a separate trust fund, explicitly stating instead that ADOR "shall deposit . . . in the state general fund all monies received" as unclaimed property under AUPA. A.R.S. § 44-310(A). The statute provides a number of exceptions to the provision mandating deposit into the State's general fund, including:

> 1.  The first two million dollars of the monies shall be deposited each fiscal year in the seriously mentally ill housing trust fund . . . .
>
> 2.  The second two million five hundred thousand dollars of the monies shall be deposited in the housing trust fund . . . .
>
> 3.  The next twenty-four million five hundred thousand dollars of the monies shall be deposited each fiscal year in the department of revenue administrative fund . . . .

A.R.S. § 44-313(A). Additionally, the statute provides that "[t]he department shall retain in a separate trust fund at least one hundred thousand dollars from which the department shall pay claims." A.R.S. § 44-313(D).[2] In the FAC, Plaintiffs allege that the amount of money retained by ADOR in a separate trust fund to pay claims makes up about 0.41% of the amount of abandoned monies that have been transferred to the State under AUPA. In sum, AUPA differs significantly from the California unclaimed property regime addressed by the court in *Taylor* by mandating deposit of almost all the abandoned monies received in the general fund or trust funds unrelated to unclaimed property for use by the State, as well as not explicitly providing for the retention of individual title to the abandoned property until permanent escheatment occurs.

Defendants argue the present case is more akin to *Edelman v. Jordan*, 415 U.S. 651 (1974), in which the Supreme Court held that where plaintiffs sought equitable restitution for benefits "wrongfully withheld" by state officials, the plaintiffs' claim was at odds with the Eleventh Amendment because the compensation would be paid "from public funds in

---

[2] The Uniform Unclaimed Property Act "contemplates and accounts for the fact that not all owners of abandoned property will seek to recover it. [The Act] therefore creates a system where a reserve is maintained in the Unclaimed Property Fund to pay approved claims and the remainder is deposited to the General Revenue Fund for use by the state." *Dani v. Miller*, 374 P.3d 779, 787 (Okla. 2016).

- 8 -

the state treasury." *Id.* at 663–64. In *Taylor*, the Ninth Circuit distinguished that case by pointing out that the *Edelman* plaintiffs "unquestionably sought money that belonged to the government, but to which the plaintiffs asserted an entitlement," as opposed to the *Taylor* plaintiffs who sought monies from a custodial trust fund that had not permanently escheated to the state. *Taylor*, 402 F.3d at 935; *see also Papasan v. Allain*, 478 U.S. 265 (1986) (concluding state enjoyed sovereign immunity from breach of fiduciary duty claim seeking compensation for money that the state was supposed to hold in trust for schools because the corpus of the trust was gone and the plaintiffs' recovery would be paid "directly from state resources").

The Court finds support for both parties' positions in the cited case law, but ultimately the *Edelman* line of cases better applies to Plaintiffs' claims seeking monetary compensation for Arizona's enforcement of AUPA. Underlying AUPA and the Uniform Unclaimed Property Act is the principle that a state can take or transfer interest in property that is shown to be abandoned for a reasonably long period of time and, if the state takes title to the property itself, use it in the public interest. *See Texaco v. Short*, 454 U.S. 516, 526 (1982) (citing among other cases *Hawkins v. Barney's Lessee*, 5 Pet. 457, 466 (U.S. 1831) ("What right has any one to complain, when a reasonable time has been given him, if he has not been vigilant in asserting his rights?")). AUPA provides for the deposit of abandoned property principally into the State's general fund as well as other trust funds unrelated to unclaimed property, and thus the transferred monies pass to the State for its use. AUPA contains specific provisions for an individual to make a claim with ADOR for property the individual previously left unclaimed with the original holder, but AUPA does not have the provisions the *Taylor* court relied on in finding the California statutory regime constituted a custodial trust fund of individuals' unclaimed property, including specific provisions establishing and maintaining the separate trust fund of unclaimed property and distinguishing between escheatment and permanent escheatment.

Because the monies sought by Plaintiffs and the putative class in this action would be monies coming principally from the State's general fund, Plaintiffs' claims for monetary

compensation are at odds with the Eleventh Amendment, and Defendants are entitled to sovereign immunity for those claims.[3] The District Court for the Western District of Texas reached the same conclusion with regard to the state of Texas's sovereign immunity from claims for monetary compensation under provisions of the Texas unclaimed property act very much akin to the provisions of AUPA. *Arnett v. Strayhorn*, 515 F. Supp. 2d 690, 693 (W.D. Tex. 2006), *aff'd sub nom. Arnett v. Combs*, 508 F.3d 1134 (5th Cir. 2007).

### B. Takings Clause

Defendants also ask the Court to dismiss Plaintiffs' claims—the remainder of Count 6 and a portion of Count 1—that Defendants' enforcement of AUPA violates the Takings Clause of the Fifth Amendment, in other words, constitutes a taking by the government of private property without just compensation.[4] *See* U.S. Const. amend. V. Plaintiffs bring their Takings Clause claim, as well as their procedural due process claims, under 42 U.S.C. § 1983. Section 1983 grants every person a right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, § 1983 is "not itself a source of substantive rights." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020). To state a § 1983 claim, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States," committed by "a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Court agrees with the analysis of Defendants as well as two of the nation's high courts—the Supreme Courts of Minnesota and Oklahoma—in the resolution of whether

---

[3] If the Court found that AUPA was similar enough to the California statutory regime the Ninth Circuit addressed in *Taylor*, the Court would still have to evaluate the sufficiency of Plaintiffs' allegations as to whether Defendants engaged in *ultra vires* and/or constitutionally infirm conduct to conclude that Defendants do not enjoy sovereign immunity from Plaintiffs' claims for monetary compensation. *Taylor*, 402 F.3d at 933 (citing *Malone v. Bowdoin*, 369 U.S. 643 (1962)). In this respect, Plaintiffs' allegations in the present case differ vastly from *Taylor*. There, among other things, the state officials intentionally violated their own laws with regard to providing adequate notice to owners of unclaimed property. *Id.* at 927–28, 934.

[4] Because Defendants are immune from Plaintiffs' claims for retrospective relief through monetary damages, Defendants' request here pertains to Plaintiffs' claims for prospective injunctive relief.

enforcement of AUPA or the Uniform Unclaimed Property Act results in an unconstitutional taking. *See Hall v. Minnesota*, 908 N.W.2d 345 (Minn. 2018); *Dani v. Miller*, 374 P.3d 779 (Okla. 2016). Importantly, in determining whether enforcement of AUPA constitutes a taking under the Takings Clause or a deprivation under the Due Process Clause, discussed *infra*, the Court finds the statute "does not deprive [Plaintiffs] of a protected property interest because it merely results in the substitution of [ADOR] as the holder of their unclaimed property." *Hall*, 908 N.W.2d at 358. Indeed, in *Anderson National Bank v. Luckett*, the Supreme Court stated that the transfer of abandoned property from a holder to the state under an unclaimed property act is a "summary substitution of the state for the [holder]" that "deprives [the plaintiffs] of none of their rights as creditors, preserving their right to demand from the state payment of the [monies], and their right to resort to the courts if payment is refused." 321 U.S. 233, 241–42 (1944). Plaintiffs do not allege that the State transformed their property by, for example, selling their stock, as in *Taylor*, 402 F.3d at 929, or transferring the principal from a previously interest-bearing account, as in *Hall*, 908 N.W.2d at 356. According to Plaintiffs' own allegations, Plaintiffs can make the same claim on the State that they could have made on the original holder, had Plaintiffs been diligent in the first instance.

Nor could Plaintiffs have a claim for constructive interest on the abandoned property transferred to the State. As the Supreme Court of Minnesota pointed out in examining that state's version of the Uniform Unclaimed Property Act,

> in assessing whether the government has effected an unconstitutional taking, the just compensation due is measured by the property owner's loss rather than the government's gain. That is, a private party is entitled to be put in as good a position pecuniarily as if his property had not been taken. He must be made whole but is not entitled to more. For [Plaintiffs], whose property was not interest bearing when it was transferred to the State, and who (so far as the complaint alleges) were not even aware of the existence of that property, much less able to use it for their own purposes, we are unable to conclude that the failure of the State to pay interest on the property is a loss for which these appellants must be compensated.

*Hall*, 908 N.W.2d at 355 (internal quotations and citations omitted).

The State's ultimate termination of a claimant's right to compensation for abandoned property—presumptively after a period of 35 years under AUPA—does not constitute a taking in violation of the Fifth Amendment either. In *Texaco, Inc.*, the Supreme Court addressed whether Indiana could terminate ownership of mineral rights abandoned for 20 years or more without compensation. 454 U.S. at 518–20. There, the Supreme Court stated:

> In ruling that private property may be deemed to be abandoned and to lapse upon the failure of its owner to take reasonable actions imposed by law, this Court has never required the State to compensate the owner for the consequences of his own neglect. We have concluded that the State may treat a mineral interest that has not been used for 20 years and for which no statement of claim has been filed as abandoned; it follows that, after abandonment, the former owner retains no interest for which he may claim compensation. It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no "taking" that requires compensation. The requirement that an owner of a property interest that has not been used for 20 years must come forward and file a current statement of claim is not itself a "taking."

*Id.* at 530; *see also Dani*, 374 P.3d at 793–94.

For these reasons, Plaintiffs' claim under the Takings Clause fails, and the Court will dismiss Count 6 and the applicable portion of Count 1.

### C. Post-Transfer Notice

Defendants next ask the Court to dismiss Plaintiffs' claims—the remainder of Count 3 and a portion of Count 1—premised on a procedural due process violation by way of alleged inadequacies in the post-transfer notice provisions of AUPA.[5] "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). Such a claim requires a plaintiff to show (1) the existence of a property or liberty interest protected by

---

[5] Again, because Defendants are immune from Plaintiffs' claims for retrospective relief through monetary damages, Defendants' request here pertains to Plaintiffs' claims for prospective injunctive relief.

the Constitution, (2) a deprivation of the interest by government action, and (3) a lack of due process. *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008).

As discussed *supra*, Plaintiffs' allegations do not lead to the plausible inference that the State's action deprived them of a property interest. *Hall*, 908 N.W.2d at 358 (finding the state's action "merely results in the substitution of [the state] as the holder of [the plaintiffs'] unclaimed property"); *Dani*, 374 P.3d at 796 (finding the Uniform Unclaimed Property Act "does not terminate an individual owner's right to recover their abandoned property, even after the statute results in its transfer to the State," because "the statute provides a procedural mechanism for owners to seek return of their abandoned property"). Accordingly, procedural due process does not attach to the transfer of abandoned property to the State.[6]

Without an identifiable deprivation, there is no easily discernible context for Plaintiffs' claim that the post-transfer notice under AUPA is inadequate. If Plaintiffs are referring to notice of the 35-year period after transfer of abandoned property to the State in which they may make a claim for the property, they are simply referring to statutory terms the State is within its powers to set forth. After abandoned property is transferred to the State, AUPA includes provisions for notice and a robust and straightforward process for an individual to recover the property the individual never sought from the original holder. With regard to notice, under AUPA, ADOR is required to publish notice throughout Arizona in newspapers as well as "in a form that in the judgment of the department is likely to attract the attention of the apparent owner of the unclaimed property." A.R.S. § 44-309(A). Moreover, a website—used by all the Uniform Unclaimed Property Act states—provides the name and last known address of the apparent owner of the abandoned property

---

[6] The procedural due process requirements of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), only "apply to an 'adjudication' that is 'to be accorded finality.'" *Texaco, Inc.*, 454 U.S. at 535. There, the Supreme Court considered the propriety of "a judicial proceeding brought to determine whether a lapse of a [property right] did or did not occur," unlike in the present case. *Id.* Instead, the present case is akin to *Texaco, Inc.*, in which the Supreme Court held that "due process requirements of notice and an opportunity to be heard do not apply to the automatic termination of a property right through operation of statute based on an owner's failure to fulfill certain conditions." *Dani*, 374 P.3d at 796.

- 13 -

and explains that the State is holding abandoned property and how to make a claim for the property. *Id.* The statute "requires notice to property owners via multiple mechanisms that are reasonably calculated, under the circumstances, to apprise interested parties that their abandoned property is (or is soon to be) in the custody of the state and that they may file a claim to have it returned to them." *Dani*, 374 P.3d at 798 (citations omitted). As the Supreme Court made clear in *Texaco, Inc.*, the statute must simply give "the person of ordinary intelligence a reasonable opportunity" to understand its provisions as to abandoned property rights, "but it has never been suggested that each citizen must in some way be given specific notice of the impact of a new statute on his property before that law may affect his property rights." 454 U.S. at 535–36 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)); *see also Hall*, 908 N.W. at 360 ("Like the statute at issue in *Texaco*, the Act is a form of notice to property owners that informs the general public of what will automatically occur if they do not tend to their property.").

For these reasons, Plaintiffs fail to state a claim that AUPA's post-transfer notice provisions violate their procedural due process rights, and the Court will dismiss Count 3 and the applicable portion of Count 1.

### D. Pre-Transfer Notice

Finally, Plaintiffs move for preliminary injunctive relief on their Due Process claims (Doc. 27), arguing in part that they are likely to succeed on the merits in showing the pre-transfer notice provisions of AUPA constitute a procedural due process violation.[7] In order to obtain a preliminary injunction, a Plaintiff must show that "(1) [he/she] is likely to succeed on the merits, (2) [he/she] is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in [his/her] favor, and (4) an injunction is in the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)).

---

[7] As discussed above, Plaintiffs fail to state a claim that the post-transfer notice provisions of AUPA constitute a procedural due process violation, and the Court will dismiss those claims.

- 14 -

The resolution of Plaintiffs' Motion for Preliminary Injunction begins and ends with an analysis of Plaintiffs' likelihood of success on the merits. For the same reasons as explained *supra*, AUPA's pre-transfer notice provisions do not violate Plaintiffs' procedural due process rights because these Plaintiffs have not alleged facts raising the plausible inference of a property deprivation. The enforcement of AUPA "does not terminate an individual owner's right to recover their abandoned property," so "due process is not offended by the automatic transfer of abandoned property into the custody of the State Treasurer." *Dani*, 374 P.3d at 796. And as discussed *supra*, Plaintiffs do not even allege the State took control of a previously interest-bearing account or, as in *Taylor*—the case Plaintiffs rely on—sold Plaintiffs' shares of stock. As a result, Plaintiffs have not shown a likelihood of success on the merits, or even serious questions going to the merits, *see Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1078 (9th Cir. 2013), that would entitle them to preliminary injunctive relief, and the Court will therefore deny Plaintiffs' Motion for Preliminary Injunction. *See Garcia*, 786 F.3d at 740 ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three [Winter elements]." (internal quotations omitted)).[8]

## IV.   CONCLUSIONS

The Court will grant Defendants' Partial Motion to Dismiss (Doc. 20) in its entirety. Based on the State's sovereign immunity under the Eleventh Amendment, the Court lacks jurisdiction over Plaintiffs' claims seeking retrospective relief through monetary damages. Plaintiffs fail to state § 1983 claims that the provisions of AUPA violate the Takings Clause of the Fifth Amendment or their procedural due process rights with respect to the post-transfer notice provisions, and Plaintiffs agree they cannot bring constitutional claims against Defendants except by way of § 1983. The Court will therefore dismiss Counts 3 through 7, the portions of Count 1 (Declaratory Relief) pertaining to Plaintiffs' procedural

---

[8] Even if Plaintiffs alleged facts plausibly showing a property deprivation, the Court would find the pre-transfer notice provisions under AUPA sufficient to meet the requirements of procedural due process, as both the high courts of Minnesota and Oklahoma found with respect to the Uniform Unclaimed Property Act. *Hall*, 908 N.W.2d at 360–61; *Dani*, 374 P.3d at 796–98.

due process claim on AUPA's post-transfer notice provisions and Plaintiffs' Takings Clause claim, and the portion of Count 2 (Pre-Transfer Notice) pertaining to retrospective relief through monetary damages. The Court finds the defects in these claims cannot be cured by amendment of the First Amended Complaint, and the Court therefore dismisses them without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000).

Because Plaintiffs have not shown a likelihood of success on the merits, or even serious questions going to the merits, of their claim that AUPA's pre-transfer notice provisions violate their procedural due process rights, the Court will deny Plaintiffs' Motion for Preliminary Injunction (Doc. 27).

**IT IS THEREFORE ORDERED** granting Defendants' Partial Motion to Dismiss First Amended Complaint (Doc. 20).

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Preliminary Injunction (Doc. 27).

**IT IS FURTHER ORDERED** that the Court will by separate Order set a Scheduling Conference under Federal Rule of Civil Procedure 16 for the remaining claim in the absence of any further Rule 12 motion practice.

Dated this 30th day of August, 2023.

Honorable John J. Tuchi
United States District Judge